UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

|  |  |  |
|---|---|---|
| JOSHUA W. MURPHY a/k/a HAMZAH WALI ABUU JIHAD,<br><br>Plaintiff,<br><br>v.<br><br>M. LINCOLN Program Director, JARRY ANDERSON, K. GILMORE Warden,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:20-cv-00475-JPH-MJD |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff, Joshua Murphy, an Indiana Department of Correction ("IDOC") inmate, filed this civil rights action while he was incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). Dkt. 1; dkt. 7 at 1. Mr. Murphy claims that the defendants forced him to follow rules of Islam that his religious sect does not follow, failed to provide him with appropriate religious meals and a clean place to pray, and refused to provide him with a religious leader that follows his sect, in violation of the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Dkt. 1; dkt. 7 at 2.

The defendants now seek summary judgment on Mr. Murphy's claims. Dkt. 35. Mr. Murphy did not respond. Because there is no evidence to support Mr. Murphy's claims, the defendants' unopposed motion for summary judgment, dkt. [35], is **GRANTED**.

1

## I.  Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Here, Mr. Murphy did not respond to the defendants' motion for summary judgment. *See* Public Docket Sheet. Mr. Murphy was released from the IDOC's custody on February 11, 2021. Dkts. 10 and 18. He was provided with notice regarding his right to respond and to submit evidence in opposition to the defendants' motion for summary judgment along with the defendants' motion,

2

corresponding brief, and designated evidence, at his home address on May 27, 2022. *See* dkt. 37 (certification of service via U.S. Mail, first class). After the clerk updated Mr. Murphy's address to reflect his residence, mail was never returned to the Court as undeliverable. *See* dkt. 22; *see also* Public Docket Sheet. It is Mr. Murphy's obligation to monitor and to litigate this case, including providing any changes to his address. Mr. Murphy has not filed anything in this action for nearly two years.  Dkt. 10 (notice of upcoming change of address filed February 5, 2021).

Accordingly, the facts alleged in the defendants' motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. L.R. 56-1(b) ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II.    Factual Background

### A. Mr. Murphy's Allegations

Construed liberally, the complaint alleges that: 1) the defendants forced Mr. Murphy to follow Islamic rules that his religious sect does not follow; 2) the

defendants burdened his religious exercise by failing to provide the appropriate meat that his religion requires and by refusing to provide a clean place for him to pray; and 3) the defendants refused to provide him a religious leader that adheres to the principles of his sect. Dkt. 1 at 4; dkt. 7 at 2.

### B. Defendants' Evidence

The defendants designated the following filings as evidence supporting their summary judgment motion: 1) Mr. Murphy's grievances, dkt. 35-3; 2) declaration of David Liebel, the IDOC's Director of Religious Services, dkt. 35-1; and 3) the IDOC's Religious Policy, dkt. 35-2.

### 1. Mr. Murphy's Grievances

In his grievances, Mr. Murphy sought a Halal diet, a clean place to pray outside of his cell, and the employment of a religious leader that follows the fiqh[1] of Imam Abu Hanifa. Dkt. 35-3 at 2, 5. In response to his diet request, Mr. Murphy was informed that the facility's Kosher, Vegan, and Vegetarian diets all comply with a Halal diet. *Id.* at 1. Mr. Murphy was directed to take the necessary steps to clean his cell and maintain it, and use a toilet cover to remedy his cleanliness request. *Id.* at 2. Finally, Mr. Murphy was directed to work with Ms. Lincoln and the Religious Services Director to arrange for an approved volunteer to lead Hanafi Fiqh religious services at Wabash Valley. *Id.* at 3–4.

---

[1] A "fiqh" is "Muslim jurisprudence," or "the science of ascertaining the precise terms of the Shariah, or Islamic law." *See Fiqh*, Encyclopedia Brittanica, https://www.britannica.com/topic/fiqh.

## 2. Declaration of David Liebel

David Liebel's declaration sets forth additional information about Mr. Murphy, general IDOC's policies, and Wabash Valley's application of these policies. Dkt. 35-1.

Mr. Murphy spent a large portion of his incarceration in the restricted status housing unit. Restricted status housing is a form of housing for offenders whose continued presence in the general population would pose a serious threat to life, property, self, staff, or other offenders, or to the security or orderly operation of a facility. *Id.* ¶¶ 4–5. While incarcerated, Mr. Murphy was permitted to practice his religion through alternative means, including speaking with an Islamic religious figure, Chaplain Anderson, or an approved volunteer; reading and purchasing uncensored religious resources; requesting appropriate religious meals; and praying with others and individually in his cell. *Id.* ¶¶ 17–21.

"The [IDOC] provides religious resources for the Islamic faith but does not recognize any sect within the Islamic faith as the official version of Islam." *Id.* ¶ 13. Offenders are permitted to practice and to follow their personal religious beliefs within the limitations of prison policy and administrative procedure. *Id.* ¶ 12. Indeed, the IDOC "does not recognize an official version of any faith." *Id.* ¶ 14. In accordance with the IDOC's policy, Wabash Valley offers general Islamic religious services but does not adopt the practices of any specific Muslim sect, in an effort "to balance the needs of worship and to accommodate a variety of Muslim practices." *Id.* ¶ 20. Wabash Valley offers a process to secure religious volunteers who then come to the facility. *Id.* The IDOC provides religious

5

resources for the Islamic faith and permits inmates to request additional theological resources in order to practice their faith without censorship. *Id.* ¶¶ 13, 15. The IDOC's chaplains assist all inmates of any faith. *Id.* ¶ 17

### 3. IDOC's Religious Services Policy

The IDOC had a religious services policy in effect during the period in which Mr. Murphy claims a religious violation occurred. *See* IDOC's "Religious Services," Policy 01-31-101 at dkt. 35-2. This policy provides that the offenders' exercise of religion and the provision and delivery of religious services shall be guaranteed in accordance with the law. *Id.* at 1. Further, prison officials may not require or coerce any offenders into adopting or participating in any religious belief or practice. *Id.*

Additionally, prison officials must provide adequate resources to support IDOC's religious programs. *Id.* ("Adequate resources shall be made available by the facilities to support the Department's religious program."). Without discriminating among religions, prison officials must hire adequate staff to facilitate the delivery of religious services, needs, expertise, and practices. *Id.* Finally, in instances where the prison's chaplain is not able to conduct religious services in accordance with a particular faith or custom and there is sufficient demand, the chaplain may seek to recruit appropriate individuals from the community and prisoners may "provide names of possible resource persons." *Id.* at 18.

### III.   Discussion

This case involves claims under the First Amendment and RLUIPA. Dkt. 7 at 2.

Mr. Murphy alleges in his complaint that the defendants forced him to follow religious rules that are not consistent with his sect of Islam—"the Figh of the late great Imam Abu Hanifa." *Id.* He also claims that the defendants burdened his religious practices by not providing appropriate religious meals and by preventing him from leaving his cell to pray multiple times. Dkt. 1 at 4. Finally, he asserts that he has been denied access to a religious leader that follows the tenets of his sect of Islam. Dkt. 7 at 2.

The defendants claim that they are entitled to summary judgment on Mr. Murphy's claims. Dkt. 35. Specifically, they argue that Mr. Murphy's injunctive relief claims are moot, that the challenges to his meals and prayer conditions are barred by res judicata, that Mr. Murphy "cannot demonstrate the existence of a substantial burden on his religious exercise, and [that] defendants are entitled to qualified immunity." Dkt. 36 at 2. For the reasons explained below, the injunctive relief claims are moot and the defendants are entitled to judgment as a matter of law on all claims.

### A. Mootness

Mr. Murphy states in his complaint that he seeks "All Way's of Life (Religions) to be Respect[ed] All Islamic Figh's." Dkt. 1 at 6. The defendants argue that this (or any) claim for injunctive relief is now moot because Mr. Murphy is no longer incarcerated at Wabash Valley. Dkt. 36 at 5 (citing *Lehn v. Holmes*,

364 F.3d 862, 871 (7th Cir. 2004) and *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996)).

"The correct standard for mootness" is that "no reasonable expectation exists that the alleged wrong will be repeated." *Lucini Italia Co. v. Grappolini*, 288 F.3d 1035, 1038 (7th Cir. 2002). A prisoner's request for injunctive relief against prison officials is moot where the prisoner is no longer incarcerated in the same facility unless the prisoner demonstrates a likelihood that he will be retransferred. *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (finding a prisoner's injunctive relief moot because he was transferred to another prison during the pendency of his case).

In this case, the Court in its due diligence reviewed the IDOC's Offender Search and takes judicial notice from the current information in that database that Mr. Murphy has been released from custody.[2] Because Mr. Murphy is no longer incarcerated at Wabash Valley, his request for injunctive relief is moot. Accordingly, the defendants are entitled to summary judgment on the claim for injunctive relief and this claim is **dismissed** for lack of jurisdiction.

### B. First Amendment and RLUIPA

Defendants assert that the summary judgment record demonstrates that they are entitled to judgment as a matter of law on Mr. Murphy's claim that they substantially burdened his religious practices by denying him access to a religious leader that follows the tenets of his sect of Islam. Dkt. 36 at 2. Claims

---

[2] According to the IDOC's Offender Data, Mr. Murphy has been released from custody. *See* https://www.in.gov/apps/indcorrection/ofs/ofs?offnum=149291&search2.x=45 &search2.y=2 (last visited Mar. 30, 2023).

under both RLUIPA and the First Amendment are evaluated under the substantial burden test, which requires the plaintiff to show that the defendants substantially burdened his free exercise rights. *See West v. Radtke*, 48 F.4th 836, 843 (7th Cir. 2022) (noting that the same substantial burden standard applies to the Free Exercise Clause, RFRA, and RLUIPA).

To avoid summary judgment on his First Amendment and RLUIPA claims, Mr. Murphy must point to evidence from which a reasonable jury could find that defendants placed a "substantial burden" on his ability to practice his religion. *Thompson*, 812 F. App'x at 364 (free exercise claim) (citing *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989); *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013)); *see also West*, 48 F.4th at 844 ("A plaintiff raising a RLUIPA claim bears the initial burden to make a prima facie case that a prison practice substantially burdens his sincere religious exercise.").

Mr. Murphy did not designate evidence of any impediment that rises to the level of a constitutional violation. In fact, he has designated no evidence at all. His complaint is not signed under the penalty of perjury, and he did not respond to the defendants' motion for summary judgment.[3] *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) (stating that "a verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary judgment, because it contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion."). "At summary judgment a

---

[3] Further, the record reflects that Mr. Murphy did not file a response specifying any claim that the Court did not identify or clarifying any allegations related to the claims outlined in the screening order. Dkt. 7; *see also* Public Docket Sheet.

party 'must go beyond the pleadings and support its contentions with proper documentary evidence.'" *Nelson v. Stevens*, 861 F. App'x 667, 670 (7th Cir. 2021) (quoting *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) and citing *Celotex Corp.*, 477 U.S. at 322–23)).

Instead, the defendants' evidence shows that they did not substantially burden Mr. Murphy's ability to practice his religion. Specifically, David Liebel's declaration reflects that Mr. Murphy was "free to practice and adhere to the requirements of a personal religious belief and that he was not required to adopt or participate in any religious belief or practice." Dkt. 35-1 ¶¶ 12, 17–21 (noting that Mr. Murphy was permitted to speak with an Islamic religious figure, Chaplain Anderson, or an approved volunteer; to read and purchase uncensored religious resources; to request appropriate religious meals, and to pray with others and individually in his cell). In addition, "[t]he [IDOC] provides religious resources for the Islamic faith but does not recognize any sect within the Islamic faith as the official version of Islam." *Id.* ¶ 13. Further, the IDOC's religious service policy provides that prison officials may not require or coerce any offenders into adopting or participating in any religious belief or practice. Dkt. 35-2 at 1.

Nor is there evidence that the defendants substantially burdened Mr. Murphy's ability to practice his religion by not providing Mr. Murphy a religious leader that adheres to the principles of his sect. Instead, the IDOC's policy states that in instances where the prison's chaplain is not able to conduct religious services in accordance with a particular faith or custom and there is sufficient

demand, the chaplain may seek to recruit appropriate individuals from the community and prisoners may "provide names of possible resource persons." *Id.* at 18. There is no evidence that Mr. Murphy ever identified any suitable religious leader.

In the absence of any evidence that Mr. Murphy's federally secured rights were violated, summary judgment in favor of the defendants is appropriate. *Reed v. Brex, Inc.*, 8 F.4th 569, 578 (7th Cir. 2021) (citing *Beardsall*, 953 F.3d at 973) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."); *Wade v. Ramos*, 26 F.4th 440, 448–49 (7th Cir. 2022) (affirming summary judgment where the "meager record" is silent on critical issues). Accordingly, the defendants are entitled to summary judgment on the merits of this claim.

### C. Res Judicata

The defendants argue that res judicata bars Mr. Murphy's remaining claims that his religious practices were substantially burdened by the defendants' failure to provide appropriate religious meals and a clean place to pray. Dkt. 36 at 2, 9 (citations omitted).

Under the principle of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *White v. Am. Family Mut. Ins. Co.*, No. 1:19-cv-04370-JMS-DLP, 2020 U.S. Dist. LEXIS 67725, at *23 (S.D. Ind. Apr. 17, 2020) (citing *Simon v. Allstate Emp. Grp. Med. Plan*, 263 F.3d 656, 658 (7th Cir.

2001)). In order to decide whether the two cases involve the same claim, courts inquire "whether they arise out of the same transaction. If they did, whether or not they were actually raised in the earlier lawsuit, they may not be asserted in the second or subsequent proceeding." *Indiana v. IRS*, 38 F. Supp. 3d 1003, 1013 (S.D. Ind. 2014) (citing *Cannon v. Burge*, 752 F.3d 1079, 1101 (7th Cir. 2014)).

Here, Mr. Murphy previously brought these same claims while he was incarcerated at Wabash Valley against the same parties, or their representatives, and these claims were adjudicated on the merits. *See Murphy v. Comm'r, Ind. Dep't of Corr.*, No. 2:19-cv-00571-JRS-MJD, 2021 U.S. Dist. LEXIS 178536 (S.D. Ind. Sept. 20, 2021) (order granting summary judgment related to the IDOC providing Mr. Murphy Kosher meals instead of a Halal meat tray) and *Murphy v. Gilmore*, Case No. 2:20-cv-00192-JRS-DLP (Dkt. 30) (order dismissing Mr. Murphy's RLUIPA claims as moot and dismissing with prejudice his First Amendment claims related to leaving his cell to pray).[4] Moreover, Mr. Murphy does not present any arguments on this issue, nor has he designated any evidence to dispute the defendants' assertions. *Lamz*, 321 F.3d at 683.

Accordingly, Mr. Murphy is barred from raising these claims in this suit and the defendants are entitled to summary judgment on these claims.

---

[4] Holding that "no reasonable jury could conclude that Mr. Gilmore substantially burdened Mr. Murphy's religious practices by refusing to allow him to leave his cell five times a day to pray. A 'substantial burden' is one that 'puts substantial pressure on an adherent to modify his behavior and violate his beliefs.' No prison policy or practice prohibited Mr. Murphy from praying in his cell, and the undisputed evidence establishes that he could cover his toilet while he prayed." Case No. 2:20-cv-192-JRS-DLP, dkt. 30 at 7 (internal citation omitted).

### D. Qualified Immunity

Finally, the defendants argue that they are entitled to qualified immunity on Mr. Murphy's claims. Dkt. 36 at 7. "Qualified immunity 'protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Taylor v. City of Milford*, 10 F. 4th 800, 806 (7th Cir. 2021) (quoting *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010)). To overcome an assertion of qualified immunity, a plaintiff must show that "(1) the defendant violated a constitutional right, and (2) that [the] right was clearly established at the time of the alleged violation." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018).

In this case, there is no evidence of a constitutional violation, so the Court need not consider whether any right was clearly established. *See Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057 (7th Cir. 2011) (because the defendants were not liable for falsely arresting plaintiff, the defendants did not require the additional protection of qualified immunity).

### IV.  Conclusion

For the reasons explained above, the defendants' unopposed motion for summary judgment, dkt. [35], is **GRANTED.** The undisputed summary judgment record reflects that Mr. Murphy's First Amendment rights were not violated and that his claim for injunctive relief is moot. Judgment consistent with this Order, and the Court's screening Order (docket 7), shall now issue.

**SO ORDERED.**

Date: 3/31/2023

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOSHUA W. MURPHY
1001 N Indiana Street
Kokomo, IN 46901

All Electronically Registered Counsel

14